IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

MARIA ANTONIA ORELLANA,

    Petitioner,

v.                                                                   No. 2:26-cv-00372-MLG-LF

WARDEN, Otero County Processing Center,
Mary De Anda-Ybarra, Field Office Director of
Enforcement and Removal Operations, El Paso
Field Office, Immigration and Customs
Enforcement; TODD LYONS, Acting Director
Immigration and Customs Enforcement;
KRISTI NOEM, Secretary, U.S. Department
Of Homeland Security; and PAMELA BONDI,
U.S. Attorney General,

    Respondents.

**ORDER PARTIALLY GRANTING PETITION FOR WRIT
OF HABEAS CORPUS AND DIRECTING RESPONDENTS TO
CONDUCT A BOND HEARING PURSUANT TO 8 U.S.C. § 1226(a)**

This matter is before the Court on Petitioner Maria Antonia Orellana's Petition for Writ of Habeas Corpus and Complaint for Declaratory and Injunctive Relief ("Petition"), Doc. 1. Orellana, a citizen of El Salvador, is detained at the Otero County Processing Center in Chaparral, New Mexico. Doc. 1 at 2, 7. Orellana challenges her continued detention and seeks a writ of habeas corpus directing federal immigration authorities to release her from custody, or, in the alternative, to grant her a bond hearing under 8 U.S.C. § 1226(a) within fourteen days. Doc. 1 at 9-10. Orellana also requests that the Court declare that her continued detention without a bond redetermination hearing violates the Immigration and Nationality Act, the Administrative Procedure Act, and the Due Process Clause of the Fifth Amendment to the United States Constitution; and award her costs

1

and reasonable attorney's fees pursuant to the Equal Access to Justice Act. Doc. 1 at 10. On February 19, 2026, federal Respondents filed a response to the Petition. *See* Doc. 8.

Whether Orellana is eligible for a bond hearing pursuant to 8 U.S.C. § 1226(a)(2), or whether she is instead subject to the mandatory detention provision provided by 8 U.S.C. § 1225(b)(2)(A),[1] is a question the Court has already addressed in regard to similarly situated petitioners. *See, e.g.*, *Cortez-Gonzales v. Noem*, No. 2:25-cv-00985, 2025 WL 3485771, at *3-5 (D.N.M. Dec. 4, 2025); *Diaz-Cruz v. Dedos*, No. 1:25-cv-01117, 2025 WL 3628517, at *2 (D.N.M. Dec. 12, 2025); *Gonzales Ramos v. Dedos*, No. 1:25-cv-00975, 2025 WL 3653928, at *2-5 (D.N.M. Dec. 17, 2025). Like the "vast majority" of courts confronted with this issue, the Court has concluded that § 1226(a)—not § 1225(b)(2)(A)—governs the detention of noncitizens[2] like Orellana, who has been residing in the United States since March 2023. Doc. 1 at 2; *see, e.g.*, *Bethancourt Soto v. Soto*, No. 25-cv-16200, 2025 WL 2976572, at *7 (D.N.J. Oct. 22, 2025) (emphasis removed) (collecting cases concluding that "§ 1225(b)(2)(A) applies only to noncitizens who are actively, *i.e.*, affirmatively, 'seeking admission' to the United States" and not to noncitizens who have already been residing in the United States).

---

[1] *Compare* § 1226(a)(2) ("On a warrant issued by the Attorney General, a[] [noncitizen] may be arrested and detained pending a decision on whether the [noncitizen] is to be removed from the United States . . . and pending such decision, the Attorney General . . . *may* release the [noncitizen] on . . . bond of at least $1,500 . . . ." (emphasis added)), *with* § 1225(b)(2)(A) ("[I]n the case of a[] [noncitizen] who is an applicant for admission, if the examining immigration officer determines that a[] [noncitizen] seeking admission is not clearly and beyond a doubt entitled to be admitted, the [noncitizen] *shall* be detained for a proceeding under section 1229a . . . ." (emphasis added)).

[2] "This [order] uses the term 'noncitizen' as equivalent to the statutory term 'alien.'" *Nasrallah v. Barr*, 590 U.S. 573, 578 n.2 (2020); *see generally* 8 U.S.C. § 1101(a)(3) ("The term 'alien' means any person not a citizen or national of the United States.").

2

Federal Respondents agree the Court's previous rulings control the outcome of this case because "the facts are not materially distinguishable for purposes of the Court's decision on the legal issue of which statutory provision authorizes Petitioner's detention." *See* Doc. 8 at 2. They assert that Orellana—like other similarly situated persons—is "subject to mandatory detention under § 1225(b)(2)(A) because [s]he was present in the United States without being admitted or paroled." Doc. 8 at 2. In advancing this argument, federal Respondents once again cite the Board of Immigration Appeals' ("BIA") opinion in *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025). Doc. 8 at 2. The BIA's opinion is not binding on the Court, and the Court rejects the BIA's interpretation of the statutes for the same reasons articulated in its other decisions. *See, e.g.*, *Cortez-Gonzales*, 2025 WL 3485771, at \*5 ("This Court is not bound by the BIA's interpretation of the relevant statutes—particularly when the [interpretation] lacks sound legal foundation."); *see also Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 386 (2024) ("The views of the Executive Branch [may] inform the judgment of the Judiciary, but [do] not supersede it."). Federal Respondents also cite the United States Court of Appeals for the Fifth Circuit's recent decision in *Buenrostro-Mendez v. Bondi*, No. 25-20496, 2026 WL 323330 (5th Cir. Feb. 6, 2026). Doc. 8 at 2 n.1. This is similarly not binding authority, and, respectfully, the Court does not find the majority opinion persuasive.

The Court therefore concludes § 1226(a) governs Orellana's detention. Respondents' reliance on § 1225(b)(2)(A) to detain Orellana without a bond hearing constitutes an ongoing violation of her right to due process under the Fifth Amendment to the United States Constitution. *See Lopez-Campos v. Raycraft*, 797 F. Supp. 3d 771, 785 (E.D. Mich. 2025) ("The discretionary bond framework under Section 1226(a) requires a bond hearing to make an individualized custody determination . . . . Therefore, without first evaluating [a noncitizen's] risk of flight or dangerousness, [her] detention is a violation of [her] due process rights."); *Jennings v. Rodriguez*,

3

583 U.S. 281, 306 (2018) ("Federal regulations provide that aliens detained under § 1226(a) receive bond hearings at the outset of detention."); *see also Reno v. Flores*, 507 U.S. 292, 306 (1993) ("It is well established that the Fifth Amendment entitles [noncitizens] to due process of law in deportation proceedings."); *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) ("[O]nce [a] [noncitizen] enters the country, the legal circumstance changes, for the Due Process Clause applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent.").

Accordingly, the Court will grant Orellana's request for a bond hearing. Federal Respondents are ordered to provide Orellana with an individualized bond hearing pursuant to § 1226(a) before a neutral immigration judge within seven days[3] of this Order's filing. At the bond hearing, federal Respondents must justify Orellana's continued detention by clear and convincing evidence.[4] If federal Respondents fail to meet this evidentiary burden, Orellana should be released on appropriate conditions. Federal Respondents are further ordered to file a status report within ten days of this Order's filing to certify their compliance. The status report must include when the

---

[3] The deadlines in this order are to be calculated in accordance with Federal Rule of Civil Procedure 6.

[4] Several years ago, the United States Supreme Court declined to decide whether the Due Process Clause of the Fifth Amendment to the United States Constitution requires that noncitizens being detained pursuant to § 1225 and § 1226 receive periodic bond hearings "at which the Government proves by clear and convincing evidence that . . . detention remains justified." *Jennings v. Rodriguez*, 583 U.S. 281, 291, 312-14 (2018). "Since *Jennings*, a number of district courts have taken up the question left open by the Supreme Court, and there has emerged a consensus view that where, as here, the government seeks to detain an alien pending removal proceedings, it bears the burden of proving that such detention is justified." *Darko v. Sessions*, 342 F. Supp. 3d 429, 435 (S.D.N.Y. 2018). The Court agrees that "given the important constitutional interests at stake, and the risk of harm in the event of error, it is appropriate to require the government to bear the burden . . . ." *Id.* Thus, "in accordance with the overwhelming majority of courts to have decided the issue," the Court "concludes that the government must bear the burden by clear and convincing evidence." *Id.* at 436.

bond hearing occurred, if bond was granted or denied, and, if bond was denied, the reason(s) for the denial.

If Orellana does not receive a bond hearing in accordance with this Order, the Court may order her immediate release.

It is so ordered.

                                                UNITED STATES DISTRICT JUDGE
                                                MATTHEW L. GARCIA